UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

    JEFFREY D. MENOFF and
    LORI L. MENOFF,                               Case No.: 19-11693-CLB

                        Debtors.

---

# PLAN OF REORGANIZATION OF
# <u>JEFFREY D. MENOFF AND LORI L. MENOFF</u>

**THIS PLAN OF REORGANIZATION AND THE
DISCLOSURE STATEMENT BEING SERVED WITH IT
CONTAIN INFORMATION THAT MAY BEAR UPON
YOUR DECISION TO ACCEPT OR REJECT THE PLAN
OF REORGANIZATION PROPOSED BY THE DEBTORS.
<u>PLEASE READ THIS DOCUMENT WITH CARE.</u>**

Dated: Clarence, New York
       November 6, 2023

**LIPPES MATHIAS LLP**
Daniel F. Brown, Esq.
*Counsel for the Debtors*
9145 Main Street
Clarence, New York 14031
Direct Dial: (716) 235-5030
Facsimile: (716) 565-1920
E-mail: dbrown@lippes.com

# TABLE OF CONTENTS

Article I  DEFINITIONS ................................................................................ 1

Article II  CLAIMS AND THEIR TREATMENT ........................................... 3

 A.  Overview of the Plan ............................................................... 3

 B.  Specification of Unclassified Claims ...................................... 4

   1.  Administrative Expenses Pursuant to Section 507(a)(2) ............... 4

    a.  Professionals .................................................... 4

     Group A Attorneys ................................................ 4

     Group B Other Professionals ............................ 5

    b.  Other Expenses of Administration ..................... 5

     Group C Accounts Payable and Fees Due the Office of the United States Trustee .............................................. 5

    c.  Tax Claims ........................................................ 6

     Group D Post-Petition and Pre-Petition Tax Claims ..................................... 6

 C.  Treatment of Unclassified Claims ........................................... 8

   Group A .................................................................................. 8

   Group B .................................................................................. 8

   Group C .................................................................................. 8

   Group D .................................................................................. 8

 D.  Specification of Classes of Claims .......................................... 9

   Class 1: Secured Claim of Community Bank, N.A. for Mortgage on Debtors' Residence and Arena ........................... 9

   Class 2: Secured Real Property Tax Claim of Town of Persia on Debtors' Residence and Arena ................................ 9

   Class 3: Secured Claim of Ford Motor Credit Company for 2015 Ford F350 .................................................................. 9

   Class 4: Secured Claim of Ford Motor Credit Company for 2018 Ford F150 .................................................................. 9

   Class 5: Secured Claim of Manufacturers and Traders Trust Company for 2015 Ford Focus ........................................ 9

   Class 6: Secured Claim of Patterson Companies for Promax Panoramic X-Ray Machine ........................................ 9

   Class 7: Secured Claims of Internal Revenue Service .......................... 10

|  |  | Class 8: | Disputed Secured Claims of New York State Department of Taxation and Finance | 10 |
|  |  | Class 9: | Unsecured Claims | 10 |
|  | E. | | Treatment of Classes of Claims Under the Plan | 11 |
|  |  | Class 1: | Secured Claim of Community Bank, N.A. for Mortgage on Debtors' Residence and Arena | 11 |
|  |  | Class 2: | Secured Real Property Tax Claim of Town of Persia on Debtors' Residence and Arena | 11 |
|  |  | Class 3: | Secured Claim of Ford Motor Credit Company for 2015 Ford F350 | 11 |
|  |  | Class 4: | Secured Claim of Ford Motor Credit Company for 2018 Ford F150 | 11 |
|  |  | Class 5: | Secured Claim of Manufacturers and Traders Trust Company for 2015 Ford Focus | 12 |
|  |  | Class 6: | Secured Claim of Patterson Companies for Promax Panoramic X-Ray Machine | 12 |
|  |  | Class 7: | Secured Claims of Internal Revenue Service | 12 |
|  |  | Class 8: | Disputed Secured Claims of New York State Department of Taxation and Finance | 12 |
|  |  | Class 9: | Unsecured Claims | 13 |
| Article III | | | MEANS OF IMPLEMENTATION OF THE PLAN AND CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN | 15 |
|  | | | Implementation | 15 |
| Article IV | | | DISTRIBUTIONS, DISPUTED CLAIMS AND AVOIDANCE ACTIONS | 15 |
|  | A. | | Distributions | 15 |
|  | B. | | Disputed Claims and Avoidable Transfers | 16 |
| Article V | | | ASSUMPTION AND REJECTION OF LEASES AND EXECUTORY CONTRACTS | 16 |
| Article VI | | | GENERAL PROVISIONS | 16 |
|  | | | Record Date | 16 |
|  | | | Payments on a Business Day | 16 |
|  | | | Interests on Claims | 17 |
|  | | | Fractional Cent | 17 |
|  | | | Setoff | 17 |
|  | | | Continuing Activities of Attorneys and Accountants | 17 |
|  | | | Headings | 17 |
|  | | | Notices | 17 |

| | Revocation or Withdrawal of the Plan | 18 |
|---|---|---|
| | Severability | 18 |
| | Governing Law | 18 |
| | Successors and Assigns | 18 |
| | Reservation on Rights | 18 |
| | Disbursing Agent | 18 |
| | Ratification of Transactions of Debtors | 18 |
| Article VII | CRAMDOWN: CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES | 19 |
| Article VIII | EFFECTS OF CONFIRMATION | 19 |
| | Revesting of Assets | 19 |
| | Confirmation Injunction/Permanent Injunction | 19 |
| | Post-Confirmation Matters | 19 |
| | Discharge of Debtors | 20 |
| Article IX | RETENTION OF JURISDICTION | 20 |
| Article X | CONCLUSION | 21 |

## PLAN OF REORGANIZATION

The Chapter 11 Debtors-in-Possession, Jeffrey D. Menoff and Lori L. Menoff (the "Debtors" or the "Menoffs"), through their counsel, Lippes Mathias LLP ("Lippes Mathias"), submit the following Amended Plan of Reorganization (the "Plan").

11 U.S.C. SECTION 1125(b) PROHIBITS SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A PLAN OF REORGANIZATION UNLESS A COPY OR SUMMARY OF THE PLAN IS ACCOMPANIED OR PRECEDED BY A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.

## Article I

## DEFINITIONS

For the purposes of the Disclosure Statement and the Plan, the following terms shall have the following meanings unless the context clearly requires otherwise:

1.1     "Administrative Expense":  A Claim for goods delivered or services rendered Post-Petition which qualifies under Code Section 503(b) to priority treatment and payment under Code Section 507(a)(2).

1.2     "Allowed Claim":  The amount of any Claim against the Debtors, proof of which is timely filed in accordance with the Code or an order of the Court fixing a deadline for filing claims, or, if no Proof of Claim is filed, that has been or hereafter is listed by the Debtors on their Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which neither an objection to the allowance thereof nor a motion for reconsideration has been interposed within any applicable limitation period fixed by this Plan, the Code, the Bankruptcy Rules, or the Court, or as to which any objection or motion for reconsideration has been interposed and such Claim has been allowed in whole or in part by a Final Determination.

1.3     "Andreozzi Bluestein LLP":  A law firm in Clarence, New York, which was appointed as counsel for the Debtors.  Andreozzi Bluestein LLP merged with Lippes Mathias LLP, effective as of June 1, 2023 and Lippes Mathias LLP became counsel for the Debtors as of that date.

1.4     "Business Day":  Any day except Saturday, Sunday or a "legal holiday," as specified in Bankruptcy Rule 9006(a).

1.5     "Case":  This Chapter 11 reorganization case.

1.6     "Claim":  Any Claim, including, but not limited to, those defined in Section 101(4) of the Code, which shall include, without limitation, any Pre-Petition or Post-Petition Claim of whatsoever type or description against the Debtors, any Claim against the Debtors for interest or a penalty of any type, any Claim against the Debtors arising out of the rejection of executory contracts, any Claim against the Debtors arising from the recovery of property under Sections 544, 545, 547, 549, 550 or 553, and any Claim for a tax, whether or not entitled to priority under

Section 507(a) of the Code. A "Claimant" or a "Creditor" is any entity holding or alleging it holds a Claim.

1.7     "Claims Bar Date":  The date set by the Bankruptcy Court as the last day for timely filing Pre-Petition Claims arising before the August 27, 2019 Filing.  By an Order dated September 28, 2020, the Court set December 31, 2020 as the last day to file Pre-Petition Claims.

1.8     "Class":  A Claim or Interest or a substantially similar group of Claims or Interests established by a Plan in accordance with Code Sections 1122 and 1123.

1.9     "Code":  The Bankruptcy Code, Title 11 U.S.C. Section 101, *et. seq.,* as amended. All terms used herein that are defined in the Code shall have the meanings set forth in the Code, unless otherwise defined by the Plan and/or the Disclosure Statement.  All statutory references in the Plan refer to sections of the Code, unless otherwise indicated.

1.10     "Confirmation":  Entry by the Court of an Order confirming this Plan after notice and a hearing pursuant to Sections 1128 and 1129.  "Confirmation Date" is the date on which the Order confirming this Plan becomes a Final Determination.  "Confirmation Hearing" is the hearing on Confirmation of the Plan or any modifications thereof (including any adjournments of the hearing).  "Confirmation Order" is the Order confirming the Plan or any modifications thereof. Events to occur "Upon Confirmation" are to take place when the Confirmation Order is entered and prior to the Confirmation Date.

1.11     "Court":  The United States Bankruptcy Court for the Western District of New York, sitting in Buffalo, New York.

1.12     "Creditor":  Any entity having an Allowed Claim against the Debtors.

1.13     "Debtors" or "Debtors-in-Possession":  Jeffrey D. Menoff and Lori L. Menoff.

1.14     "Disclosure Statement":  The Disclosure Statement prepared in conjunction with this Plan in its present form, with such modifications, amendments or supplements as may be subsequently filed.

1.15     "Distribution":  A payment or other transfer made to a Creditor in consideration of a Claim pursuant to the terms of this Plan.

1.16     "Effective Date":  The first Business Day following the Confirmation Date.  With respect to any payment required to be made on the Effective Date, the Debtors shall make such payment on the Effective Date or as soon thereafter as reasonably practical, such leeway being intended to provide for the completion of ministerial bookkeeping and clerical tasks incidental to payment.  As to certain Creditors, including, but not limited to, those holding Unresolved Claims, payment may not occur until sometime after the Effective Date, until after a Final Determination of the allowed amounts of such Claims.

1.17     "Filing":  The August 27, 2019 filing by Jeffrey D. Menoff and Lori L. Menoff of a petition for relief under Chapter 11 of the Code.

1.18    "Final Determination": An order or judgment of the Court, the operation of which has not been stayed, as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal to or seek review or rehearing or a writ of *certiorari* has expired and as to which no appeal or petition for review or rehearing or *certiorari* has been taken or is pending.

1.19    "Impaired Class": Any Class of Claims the treatment of which is altered by the Plan and "impaired" within the meaning of Section 1124 of the Code.

1.20    "Lippes Mathias LLP": A law firm in Clarence, New York, which is counsel for the Debtors, as successor by merger to Andreozzi Bluestein LLP, effective as of June 1, 2023.

1.21    "Plan": This Plan of Reorganization in its present form, with such modifications, amendments or supplements as may be subsequently made, with any necessary court approval.

1.22    "Post-Petition": A matter occurring or a Claim arising after the Filing.

1.23    "Pre-Petition": A matter occurring or a Claim arising before the Filing.

1.24    "Rule(s)": The Federal Rules of Bankruptcy Procedure as authorized by Title 28 U.S.C. Section 2075.

1.25    "Secured Claim": Any Claim secured by a lien or security interest against property of the Debtors, within the meaning of Code Section 506, or that is subject to setoff, pursuant to Code Section 553, to the extent of the allowed amount of such Claim and to the extent of the value of the collateral or amount subject to setoff. "Secured Creditors" are those holding "Secured Claims".

1.26    "Substantial Consummation": The commencement of Distributions under this Plan.

1.27    "Unresolved Claims": Claims which the Debtors believe to be contingent, unliquidated or disputed as of the Distribution Date, or as to which the Debtors require further information or analysis, as of that date, before it can make a determination whether or not to object to such Claims.

1.28    "Unsecured Claim": Any Claim, whether or not liquidated, disputed or contingent, other than an Administrative Expense Claim, a Secured Claim or a Priority Claim. "Unsecured Creditors" are those holding Unsecured Claims.

## Article II

## CLAIMS AND THEIR TREATMENT

### A. OVERVIEW OF THE PLAN

2.1    The Debtors are proposing a Plan that details the amounts of payments and the manner in which the Debtors propose to make payments and Distributions to their Creditors. The Debtors' present financial situation does not permit the Debtors to propose a Plan which provides for payment in full to all of their Creditors. As detailed more fully below, however, in accordance

with the provisions of the Code, the Debtors are proposing a Plan which they believe will pay to all of their Creditors Distributions of at least as much or more than they would have been entitled to receive had all non-exempt assets of the Debtors been liquidated under Chapter 7 of the Code. *See*, Disclosure Statement Exhibit A, Chapter 7 Liquidation Analysis of the Debtors.

      2.2      Pursuant to Code Section 1123(a)(1), Administrative Expense Claims against the Debtors under Section 507(a)(2) and certain unsecured priority tax Claims under Section 507(a)(8) are not designated by the Plan into Classes for voting purposes. The following is a discussion of the treatment of such unclassified Claims against the Debtors:

## B. SPECIFICATION OF UNCLASSIFIED CLAIMS

## 1. ADMINISTRATIVE EXPENSES PURSUANT TO SECTION 507(a)(2)

### a. PROFESSIONALS

      2.3      Since the Filing, the Debtors have been authorized by the Court to employ in this Case the professionals discussed below.

      2.4      The amounts set forth below are estimates of the total unpaid fees and expenses that will be incurred through Confirmation and are not intended to cap, to fix or to limit the amount of Claims actually incurred by such parties. Such amounts are being estimated for administrative purposes only and do not represent either an authorization or an allowance of such fees or a limitation on the amount of such fees. All professional fees in connection with the activities of professionals shall be subject to Court review and allowance.

## Group A

## ATTORNEYS

| Claimant | | Estimated Unpaid Fees and Costs Through Confirmation |
|---|---|---|
| Lippes Mathias LLP Successor by Merger to Andreozzi Bluestein LLP *(General Counsel for the Debtors)* 9145 Main Street Clarence, New York 14031 | *ca.* | $53,000.00 |
| Lundberg Price P.C. *(Special Real Estate Counsel for the Debtors)* 202 West Fourth Street Jamestown, New York 14701 | | $0.00 |
| **Total Group A:** | | **$53,000.00** |

2.5     There is currently a balance due to counsel for the Debtors from the Debtors in the approximate amount of $13,989.60 from fees previously allowed through its second interim fee application and consideration of certain other fees has been deferred by the Court until the closure of the Case.  In the coming weeks, Lippes Mathias will be filing a further fee application and seeking approval and payment of its fees through Confirmation.

2.6     There is currently no balance due to Lundberg Price, P.C. ("Lundberg Price"). Lundberg Price's fees were paid in full through the Debtors' previous sale of a horse farm which they owned as of the Filing of this case.

## Group B

## OTHER PROFESSIONALS

| Claimant | | Estimated Unpaid Fees and Costs Through Confirmation |
|---|---|---|
| Bahgat & Laurito-Bahgat<br>*(Accountants for the Debtors)*<br>16 West Main Street, Suite One<br>Fredonia, New York 14063 | *ca.* | $11,000.00 |
| Holiday Valley Realty Co. Inc.<br>*(Real Estate Broker for the Debtors)*<br>Post Office Box 1818<br>Ellicottville, New York 14731 | | $0.00 |
| **Total Group B:** | | **$11,000.00** |

2.7     There is currently a balance due to Bahgat & Laurito-Bahgat ("Bahgat") from the Debtors in the approximate amount of $4,033.75 from fees previously allowed through its second interim fee application.  In the coming weeks, Bahgat will be filing a further fee application and seeking approval and payment of its fees through Confirmation.

2.8     There is currently no balance due to Holiday Valley Realty Co. Inc. ("Holiday Valley").  Holiday Valley's fees were paid in full through the Debtors' previous sale of a horse farm which they owned as of the Filing of this case.

## b.  OTHER EXPENSES OF ADMINISTRATION

## Group C

## ACCOUNTS PAYABLE AND FEES DUE
## THE OFFICE OF THE UNITED STATES TRUSTEE

2.9     This Group includes all expenses incurred by the Debtors since the Filing, other than tax Claims and those Claims identified in Groups A and B above, for ordinary costs of living

and/or doing business and for any fees due to the Office of the United States Trustee which remain outstanding at Confirmation and which are entitled to Administrative Expense status under Code Sections 503 and 507(a)(2). The Debtors have been paying (and will continue to pay) all such bills on a current basis (when due) since the Filing. Accordingly, no liability is being listed to be paid as a part of this Plan. Post-Confirmation, the Debtors shall reserve sufficient funds to permit the payment of anticipated administrative expenses through the closing of this case, including United States Trustee Fees.

| Claimant | | Current Unpaid Fees and Costs |
|---|---|---|
| U.S. Trustee's Fees | *ca.* | $0.00 |
| Monthly Bills/Accounts Payable (*Estimate*) | *ca.* | $0.00 |
| **Total Group D:** | ***ca.*** | **$0.00** |

### c. TAX CLAIMS

### Group D

### POST-PETITION AND PRE-PETITION TAX CLAIMS

2.10    On May 5, 2023, the New York State Department of Taxation and Finance filed an Administrative Proof of Claim reflecting a balance of $52.49 due. The Debtors have since paid that bill. All other Post-Petition tax obligations of the Debtors are believed to be current. To the extent that this understanding is incorrect, any such obligation will be paid as an Administrative Expense Claim, either upon the Effective Date of the Plan or when due, if later.

2.11    Group D also includes all Pre-Petition Claims of taxing authorities entitled to priority under 11 U.S.C. Section 507. The Internal Revenue Service (the "IRS") and NYS Tax have filed Claims in the amounts set forth below in the Debtors' bankruptcy case. To the extent that the IRS or NYS Tax filed tax liens Pre-Petition, the taxes identified on those liens were classified by the IRS and by NYS Tax as being "Secured Claims."

2.12    Notwithstanding how their claims were classified by either the IRS or NYS Tax, a tax liability for which a tax lien was filed is only entitled to be treated and paid as a Secured Claim if the Debtors' assets were of a sufficient value when the Debtors' Petition was filed that equity existed to which those liens could attach.

2.13    Because all of the tax claims of the IRS were assessed before the March 20, 2018 date on which NYS Tax recorded its Warrant for the Debtors' New York State tax obligations, it is the Debtors' position that the assessment liens of the IRS have priority over all of those claims filed by NYS Tax as being Secured Claims. *See,* United States v. State of New York, 1987 W.L. 9392, 1987 U.S. Dist. Lexis 14745, 87-1 U.S.T.C. (CCH) ¶9289; 59 A.F.T.R.2d (RIA) 1015 (W.D.N.Y. 1987) (Elfvin, J.); 26 U.S.C. §§ 6321 and 6323(a); *see also,* 26 C.F.R. § 301.6323(h)-1(g). Accordingly, there is no equity to secure any claims of NYS Tax and all claims of NYS Tax are unsecured.

2.14    Additionally, it is the Debtors' position that as of the Filing of this Case, the claims of the IRS were less than fully secured. As is discussed in Class 7 below, the IRS has not disputed the Debtors' position and has modified its previously filed Secured Claim to equal the Debtors' date of Filing valuation of their assets.

2.15    As discussed below and in Class 8 below, it is the Debtors' position that the claims of NYS Tax are wholly unsecured and NYS Tax has been requested by counsel for the Debtors to agree that the amounts of its claim identified below as "Principal" and "Interest" should be classified as priority claims, pursuant to 11 U.S.C. Section 507(a)(8) and that the amounts of its claim identified below as "Penalty" should be classified as unsecured claims. NYS Tax has not taken any position as to that request. If NYS Tax does not consent to the treatment of its claims as being wholly unsecured, the Debtors will file a motion requesting that the Court make such a determination.

2.16    The Plan classifies all unsecured Pre-Petition tax Claims listed below as priority Claims, to the extent that such Claims are for principal and Pre-Petition interest. Claims for unsecured penalties are classified and treated as a part of Class 9 Unsecured Claims below.

2.17    The Pre-Petition tax Claims which have been filed in the Debtors' Case by the IRS and by NYS Tax are summarized in the following chart:

| Taxing Authority | Kind of Tax | Tax Period | Principal | Interest | Penalty | Totals |
|---|---|---|---|---|---|---|
| NYS Dept. of Taxation & Finance (Secured) | Income[1] | 12/31/2012 | $23,850.00 | $16,407.31 | $12,267.75 | **$52,525.06** |

---

[1] All income tax returns were filed jointly.

| Taxing Authority | Kind of Tax | Tax Period | Principal | Interest | Penalty | Totals |
|---|---|---|---|---|---|---|
| | Income | 12/31/2014 | $8,450.67 | $17,403.27 | $20,201.50 | **$46,055.44** |
| | Income | 12/31/2015 | $42,398.00 | $14,847.32 | $19,884.15 | **$77,129.47** |
| **Total** | | | **$74,698.67** | **$48,657.90** | **$52,353.40** | **$175,709.97** |
| | | | | | | |
| IRS (Secured) | Income | 12/31/2010 | $0.00 | $49,175.00 | $117,547.22 | **$166,722.22** |
| | Income | 12/31/2012 | $21,667.00 | $5,990.41 | $0.00 | **$27,657.41** |
| | Income | 12/31/2013 | $164,822.00 | $39,351.50 | $0.00 | **$204,173.50** |
| | Income | 12/31/2014 | $231,878.00 | $46,872.37 | $123,087.38 | **$401,837.75** |
| | Income | 12/31/2015 | $252,302.00 | $41,899.55 | $13,364.08 | **$307,565.63** |
| | Income | 12/31/2016 | $103,528.00 | $12,468.53 | $0.00 | **$115,996.53** |
| Total | | | **$774,197.00** | **$195,757.36** | **$253,998.68** | **$1,223,953.04** |
| | | | | | | |
| IRS (General Unsecured) | Income | 2012-2016 | $0.00 | $0.00 | $278,794.19 | **$278,794.19** |
| | | | | | | |

## C. TREATMENT OF UNCLASSIFIED CLAIMS

2.18    <u>Group A</u> - The Debtors will pay the fees of Lippes Mathias, as allowed by the Court, and upon such terms as are agreed to by the Debtors and Lippes Mathias. These fees are proposed to be paid on the schedule and in the amounts as set forth in the Debtors' projections.

2.19    <u>Group B</u> - The Debtors will pay the fees of Bahgat, as allowed by the Court, and upon such terms as are agreed to by the Debtors and Bahgat. These fees are proposed to be paid on the schedule and in the amounts as set forth in the Debtors' projections.

2.20    <u>Group C</u> - The Debtors, using either their available cash or their future earnings, shall pay in full the allowed amounts of any Post-Petition trade account Claims and/or United States Trustee's Fees in the ordinary course of business.

2.21    <u>Group D</u> – (a) The Debtors shall pay in full the allowed amount of any Administrative Expense tax Claims in Group D as of the Effective Date of the Plan, or when due, if later, subject to a Final Determination on any objection by the Debtors. (b) The treatment of the Secured Claim of the IRS is the subject of Class 7 below. The treatment of the disputed Secured Claim of NYS Tax is the subject of Class 8 below.

2.22    Consistent with the requirements of 11 U.S.C. §1129(a)(9)(C), after Confirmation, estimated to occur in January, 2024, the Debtors shall pay NYS Tax's priority unsecured tax claims in full, with interest at the rate of 10.5% per annum, through monthly payments of $1,500.00, estimated to begin on the 20th day of February, 2024, until NYS Tax's Pre-Petition priority unsecured tax claim is paid in full. It is estimated that this claim will be fully paid in August, 2024, within 60 months of the Filing of this case.

2.23    The general unsecured penalty claims of both the IRS and NYS Tax will be paid only as provided in Class 9 below.

## D.  SPECIFICATION OF CLASSES OF CLAIMS

2.24    The following provides the time and formulas for payment of the Creditors of the Debtors whose claims are not disputed by the Debtors within 120 days after the Effective Date. An objection by the Debtors to a claim will result in an extension of the time for payment equal to the time between the filing of any such objection to the Claim and the Final Determination thereon.

2.25    <u>Class 1:  Secured Claim of Community Bank, N.A. for Mortgage on Debtors' Residence and Arena</u>.  This Class consists of the Claim of Community Bank, which was secured as of the Filing by a mortgage on the Debtors' residence located at 8925 Nash Hill Road, Gowanda, New York 14070 and on the Debtors' Arena.  Pursuant to Proof of Claim No. 7 filed by Community Bank on or about September 20, 2019, as of the Filing, the Debtors were obligated to Community Bank for this secured mortgage claim in the amount of $168,384.29.

2.26    <u>Class 2:  Secured Real Property Tax Claim of Town of Persia on Debtors' Residence and Arena</u>.  This Class consists of the Debtors' secured pre-petition obligation for real property taxes on the Debtors' residence and Arena.  Upon information and belief, as of the Filing, the Debtors were obligated to the Town of Persia for pre-petition real property taxes on that combined parcel in the approximate amount of $26,563.03.

2.27    <u>Class 3:  Secured Claim of Ford Motor Credit Company for 2015 Ford F350</u>.  This Class consists of the Secured Claim of Ford Motor Credit Company ("Ford"), which Claim was secured by a 2015 Ford F350 owned by Debtor Lori Menoff and the Debtors' son, Matthew Menoff.  Pursuant to Proof of Claim No. 13 filed by Ford on or about October 2, 2019, as of the Filing, Debtor Lori Menoff and Matthew Menoff were obligated to Ford for this vehicle loan in the amount of $9,905.09.

2.28    <u>Class 4:  Secured Claim of Ford Motor Credit Company for 2018 Ford F150</u>.  This Class consists of the Secured Claim of Ford, which Claim is secured by a 2018 Ford F150 owned by Debtor Jeffrey Menoff.  Pursuant to Proof of Claim No. 14 filed by Ford on or about October 2, 2019, as of the Filing, Debtor Jeffrey Menoff was obligated to Ford for this vehicle loan in the amount of $46,252.75.  Upon information and belief, the current balance due on this vehicle loan is approximately $8,340.25.

2.29    <u>Class 5:  Secured Claim of Manufacturers and Traders Trust Company for 2015 Ford Focus</u>.  This Class consists of the Secured Claim of Manufacturers and Traders Trust Company ("M&T"), which Claim is secured by a 2015 Ford Focus owned by Debtor Lori Menoff and the Debtors' daughter, Angel Menoff.  Upon information and belief, as of the Filing, Debtor Lori Menoff and Angel Menoff were obligated to M&T for this vehicle loan in the approximate amount of $13,438.60.

2.30    <u>Class 6:  Secured Claim of Patterson Companies for Promax Panoramic X-Ray Machine</u>.  This Class consists of the Secured Claim of Patterson Companies ("Patterson"), which Claim is secured by a Promax panoramic x-ray machine owned by Debtor Jeffrey Menoff and used by his dental practice.  Pursuant to Proof of Claim No. 16 filed by Patterson on or about

November 25, 2019, as of the Filing, Debtor Jeffrey Menoff was obligated to Patterson for this equipment loan in the amount of $28,104.41. Upon information and belief, the current balance due on this equipment loan is approximately $2,345.52.

2.31    Class 7:  Secured Claims of Internal Revenue Service.  This Class consists of the Secured Claims of the IRS for income taxes.  On February 24, 2022, after communications with counsel for the Debtors stating the Debtors' position that the original claim filed in this case by the IRS on September 19, 2019 was less than fully secured, the IRS filed an Amended Proof of Claim in this case reducing its secured claims from a total of $1,504,333.23 to $1,223,953.04 and reclassifying an additional $280,380.19 of its claims as only being payable as general unsecured claims.  The Debtors do not dispute the amount of or the classification of this claim, as amended.

2.32    The Debtors have been making post-bankruptcy adequate protection payments to the IRS since shortly after the Filing of this case.  It is estimated that these payments, which have included both monthly adequate protection payments and additional payments when the Debtors' cashflow has allowed them to do so, will total approximately $466,000.00 as of December 31, 2023.  Additionally, the IRS received a lump sum payment in the amount of $357,015.06 representing the net proceeds from the sale of the Arena.  Upon information and belief, as of December 31, 2023, the IRS's Secured Claim will have been paid down by a total of approximately $818,015.06 and the balance due at that time will total approximately $400,938.04.

2.33    Post-Petition, the Debtors timely filed and timely amended their 2020 IRS Form 1040.  Because the Debtors' 2020 sale of their horse barn and farm caused the Debtors to incur a significant long-term capital loss, the Debtors are at this time entitled to receive from the IRS a 2020 income tax refund in the amount of $47,001.00, plus statutory interest.  The IRS has been holding this refund and previously requested that the Debtors' counsel consent to this Post-Petition refund being applied to the Debtors' Pre-Petition tax liabilities.  Because there is no statutory right for a creditor to offset a Post-Petition tax refund against a Pre-Petition tax debt, the Debtors have not previously taken a position on this request.

2.34    Class 8:  Disputed Secured Claims of New York State Department of Taxation and Finance.  This Class consists of the disputed Secured Claims of NYS Tax for income taxes.  On August 28, 2019, NYS Tax filed a Proof of Claim in this case asserting a secured claim in the amount of $175,709.97.  As discussed above, the Debtors do not dispute the amount of this claim, however, the Debtors assert that these claims are wholly unsecured because all equity in the Debtors' assets is subject to liens and security interests which have priority over the claims of NYS Tax.  Instead, the Debtors submit that the NYS Tax claims for tax principal, in the combined total amount of $74,698.67, and interest, in the combined total amount of $48,657.90, should be classified as priority tax claims totaling $123,356.57.  Tax penalty claims, in the combined total amount of $52,353.40 should be reclassified as general unsecured claims.

2.35    Class 9:  Unsecured Claims.  This Class consists of all Unsecured Pre-Petition Claims against the Debtors not otherwise provided for by the Plan, including credit card debt, all unsecured tax penalties, any lease rejection damages claims and all other Claims not specifically addressed elsewhere in the Plan.

2.36    The Debtors' Schedule E/F identified Jeffrey Menoff's mother, Regina Menoff, as holding a claim in the amount of $15,002.30 for a pre-petition loan which she had made to Dr.

Menoff for use in his dental practice. Regina Menoff passed away after the Filing and while this Chapter 11 case has been pending, the executrix of his mother's estate reduced Jeffrey Menoff's distribution from his mother's estate by an amount equal to the loan balance then due. Accordingly, no payment will be made to the Estate of Regina Menoff by the Debtors.

2.37    As Scheduled by the Debtors or as stated in filed Proofs of Claim, Claims in this Class, excluding the claim of Regina Menoff, totaled approximately $440,243.18. As stated above, the $52,353.40 in NYS Tax penalty claims will be reclassified as general unsecured claims and included in this Class, such that general unsecured claims will total approximately $492,596.58.

## E. TREATMENT OF CLASSES OF CLAIMS UNDER THE PLAN

2.38    The following provides the time and formulas for payment and/or satisfaction of the Claims of Creditors of the Debtors whose Claims are not disputed by the Debtors and/or which are allowed by the Court, after any objection by the Debtors within 180 days of the Effective Date of the Plan. An objection by the Debtors to a Claim will result in an extension of the time for payment until a Final Determination thereon.

2.39    Class 1: Secured Claim of Community Bank, N.A. for Mortgage on Debtors' Residence and Arena. This Claim is unimpaired. As discussed above in this Disclosure Statement, Community Bank's mortgage claim was paid in full from the sale of the Arena in July, 2020. For that reason, no payments will be made to Community Bank on this Claim under the Plan.

2.40    Class 2: Secured Real Property Tax Claim of Town of Persia on Debtors' Residence and Arena. This Claim is unimpaired. As discussed above in this Disclosure Statement, the Town of Persia's Pre-Petition secured real property tax claim was paid in full from the sale of the Arena in July, 2020. For that reason, no payments will be made to the Town of Persia on this Pre-Petition Claim under the Plan. Post-Petition real property tax administrative expenses will be paid by the Debtors in the ordinary course as they come due.

2.41    Class 3: Secured Claim of Ford Motor Credit Company for 2015 Ford F350. This Claim is unimpaired. This vehicle was sold by Matthew Menoff and the loan was paid off in full while this case has been pending. For that reason, no payments will be made to Ford on this Claim under the Plan.

2.42    Class 4: Secured Claim of Ford Motor Credit Company for 2018 Ford F150. This Claim is unimpaired. Debtor Jeffrey Menoff's dental practice will continue to make monthly payments to Ford in the amount of $758.25 per month, which includes interest at the contract rate of 0.0% per annum, until Ford's Secured Claim is paid in full, which is expected to occur in September, 2024. If at any time the dental practice is unable to make these payments to Ford, the Debtors will make the required monthly payments to Ford until Ford's Secured Claim is paid in full.

2.43    Ford will retain its existing liens and security interests on its collateral until its Secured Claim is paid in full.

2.44     Class 5:  Secured Claim of Manufacturers and Traders Trust Company for 2015 Ford Focus.  This Claim is unimpaired.  This vehicle loan was paid off in full while this case has been pending.  For that reason, no payments will be made to M&T on this Claim under the Plan.

2.45     Class 6:  Secured Claim of Patterson Companies for Promax Panoramic X-Ray Machine.  This Claim is unimpaired.  Debtor Jeffrey Menoff's dental practice will continue to make monthly payments to Patterson in the amount of $635.73 per month, which includes interest at the contract rate of 5.95% per annum, until Patterson's Secured Claim is paid in full, which is expected to occur in February, 2024.  If at any time the dental practice is unable to make these payments to Patterson, the Debtors will make the required monthly payments to Patterson until Patterson's Secured Claim is paid in full.

2.46     Patterson will retain its existing liens and security interests on its collateral until its Secured Claim is paid in full.

2.47     Class 7: Secured Claims of Internal Revenue Service.  This Claim is impaired.  The Debtors will continue making monthly adequate protection payments to the IRS at the rate of $5,000.00 per month until the Debtors' Plan is confirmed, which it is estimated will occur in January, 2024.  The Debtors shall pay the IRS's Secured Claims in full, with interest at the IRS rate in effect as of the Confirmation Date, currently at the rate of 8% per annum.    From Confirmation of the Debtors' Plan, which is estimated to occur in January, 2024, through August, 2024, the Debtors will make monthly payments of $5,000.00, beginning on the 20th day of the month following Confirmation.  Thereafter, beginning in September, 2024, after the Debtor's priority tax payments to NYS Tax are completed, the Debtors will begin making 45 payments to the IRS at the increased rate of $10,000.00 per month, until the IRS's Secured Claims are paid in full.  It is estimated that this Secured Claim will be fully paid in June, 2028, approximately 51 months after Confirmation of the Debtors' Plan.

2.48     Because the Debtors' proposed payments to the IRS will extend beyond 60 months after the Filing of this case, the consent of the IRS to the confirmation of the Debtors' Plan is contingent upon the payment terms provided by the Plan being acceptable to the IRS.  The Debtors and the IRS have communicated regarding the Debtors' Plan proposal, however, the IRS has not expressly taken any position regarding these proposed payment terms.

2.49     As a part of their proposal to the IRS, the Debtors are also proposing that the $47,001.00 amount of their 2020 Federal income tax refund, plus interest, be applied as an estimated tax payment towards the Debtors' 2023 and/or 2024 Federal income taxes.

2.50     The IRS will retain its existing Pre-Petition and Post-Petition liens on assets of the Debtors until its Secured Claims are paid in full, at which time the IRS will release its liens.

2.51     Class 8:  Disputed Secured Claims of New York State Department of Taxation and Finance.  This Claim is impaired.  Because the tax claims of NYS Tax are wholly unsecured, no distributions will be made to NYS Tax on account of any of its claims as a secured claim.  As is discussed above, its claims for the tax and interest shown above will be treated and paid as priority unsecured claims and its penalty claims will be treated solely as general unsecured claims.

2.52     Because all of the claims of NYS Tax are wholly unsecured, NYS Tax will release its previously filed Tax Warrants upon Confirmation of the Debtors' Plan.

2.53     Class 9:  Unsecured Claims.  The Claims of Class 9 Claimants are impaired under the Plan.  The Plan contemplates that a total of $50,050.00 will be distributed to such claimants over a period of 48 months, *pro rata*.  No Pre-Petition interest will be paid on such payments over the life of the Plan.  The Debtors estimate that this will represent a distribution to unsecured creditors of the Debtors of slightly more than 10% of their claims.

2.54     After Confirmation, beginning in February, 2024, the Debtors will begin to deposit into a new bankruptcy distribution checking account the sum of $750.00 per month.  Beginning in February, 2027, the Debtors will increase their monthly deposits to $850.00.  The Debtors will make a deposit in the amount of $5,000.00 in July, 2028 and will make a final deposit in the amount of $3,600.00 in August, 2028.  As provided below, periodic *pro rata* payments will be made to the holders of undisputed liquidated claims using these deposited funds.

2.55     A first dividend of approximately $4,620.00 will be paid, *pro rata*, to holders of undisputed liquidated claims approximately six months after Confirmation, intended to be made on or about August 15, 2024.  Initial distributions to any holders of contingent, unliquidated or disputed claims will be deferred until such time as a Final Order is entered determining the allowed amount of such claims.  Thereafter, approximately every six months, on or about the dates listed below, the Debtors will make *pro rata* distributions to allowed general unsecured creditors as provided below:

| Payment Year | Amount [$] to be Distributed *Pro Rata*, to Allowed Claimants |
|---|---|
| 2024 (On or about August 15) | $4,620.00 |
| 2025 (On or about February 15) | $4,620.00 |
| 2025 (On or about August 15) | $4,620.00 |
| 2026 (On or about February 15) | $4,620.00 |
| 2026 (On or about August 15) | $4,620.00 |
| 2027 (On or about February 15) | $4,620.00 |
| 2027 (On or about August 15) | $4,620.00 |
| 2028 (On or about February 15) | $4,620.00 |
| 2028 (On or about August 15) | $13,090.00 |
| **TOTAL:** | **$50,050.00** |

2.56    After the time that payments pursuant to the terms of the Debtors' Plan are completed, as provided in the Debtors' Plan, upon Confirmation of the Debtors' Plan, all creditors will be stayed from any effort to pursue any collection actions against the Debtors without Court authorization.  The remaining balance due to holders of all general unsecured claims will be discharged when the Debtors receive their bankruptcy discharge.

2.57    The Debtors reserve the right to object to any Class 9 Claim, in which case Distributions to such creditors shall be made only upon a Final Determination of such Claims.

## Article III

## MEANS OF IMPLEMENTATION OF THE PLAN AND
## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

3.1     Implementation.   This Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code.

3.2     The source for the payment of distributions to creditors pursuant to the Plan is the Debtors' future income.  Attached to the Disclosure Statement as Exhibit B is a forecast of the Debtors' cash flow for the years 2023 through 2028, which reflects that the Debtors project that they will have the ability to make the payments required by their Plan.

## Article IV

## DISTRIBUTIONS, DISPUTED CLAIMS AND AVOIDANCE ACTIONS

## A.  DISTRIBUTIONS

4.1     The Debtors shall make Distributions in accordance with the priorities established by the Code and the terms of the Plan.

4.2     After the Effective Date, the Debtors shall commence making payments to all Classes of Creditors in accordance with the terms of the Plan.

4.3     Approximately six months after the Effective Date, an initial Distribution will be made to all Class 9 Claimants, based upon the estimated total amount of all Class 9 *pro rata* Claims, as filed by the Claimant, or, if no Claim has been filed by a Claimant, as listed by the Debtors on their bankruptcy Schedules.

4.4     No Distribution will be made to those holders of Claims which the Debtors have listed in their Bankruptcy Schedules as being contingent, unliquidated or disputed, or as to which Claims the Debtors file a Claims objection and/or require further information or analysis before they can make a determination whether or not to object to such Claims (collectively referred to as "Unresolved Claims").  Similarly, to the extent that the Debtors believe any Claim to be subject to setoff or believe any Claimant to have received an avoidable transfer, the Debtors may defer making such Distribution until the time of a Final Determination on any such asserted right of setoff or right to avoid a transfer.

4.5     Payments by the Debtors shall be by checks to be cashed within sixty (60) days of their issuance.  The Debtors will include with each distribution a note indicating that this is a Plan payment pursuant to the Debtors' Chapter 11 Plan and reminding each creditor that they must notify the Court and the Debtors of any future address change.  In the event that any payments to creditors are returned as being undeliverable, the Debtors will use their best efforts to locate an updated address for that creditor and may re-issue any previously returned payment.  In the event that both (1) the Debtors are unable to locate any creditor whose check is returned after making best efforts and (2) the Claimant to whom an uncashed check was issued does not otherwise notify the Debtors or the Court of their new address before all Class 9 distributions are completed, the

Claimant shall be conclusively deemed to have waived any Claim to said proceeds by reason of its inaction..

4.6     The Debtors need not pay to any Claimant any dividend in an amount less than $10.00, and any such dividend is forgiven irrespective of any obligation to pay later dividends to that Creditor.

## B. DISPUTED CLAIMS AND AVOIDABLE TRANSFERS

4.7     The Debtors shall retain the power to object to Claims and to exercise their Chapter 5 Powers as authorized by the Code. Objections to Claims shall be filed by the Debtors with the Court and served by the Debtors upon the holder of each Claim to which objection is made within 120 days after the Effective Date of this Plan.

4.8     Upon information and belief, the Debtors made no avoidable pre-petition transfers, any applicable statutes of limitations have expired and no proceedings to avoid any preferential transfers or fraudulent conveyances are planned.

## Article V

## ASSUMPTION AND REJECTION OF
## LEASES AND EXECUTORY CONTRACTS

5.1     As reflected on the Debtors' Schedule G, as of the Filing, the Debtors had two unexpired leases, one with Ford for a 2017 Ford F150 and one with James V. Paige, Jr. Development Corp. ("Paige Development") for Debtor Jeffrey Menoff's dental practice.

5.2     The lease with Ford was assumed pursuant to a Stipulation filed on December 10, 2019 (Docket Entry No. 66).

5.3     The lease with Paige Development was assumed pursuant to an Order entered on December 23, 2019 (Docket Entry No. 79).

5.4     Any executory contracts and leases not otherwise assumed by an Order of the Bankruptcy Court prior to the Effective Date, shall be deemed to have been rejected by the Debtors as of the Filing, without prejudice to any Administrative Expense Claim for actual use Post-Petition.

## Article VI

## GENERAL PROVISIONS

6.1     Record Date. The date set by the Court's Order approving the Debtors' Disclosure Statement as the last date for voting for or against the Plan will be deemed to be the Record Date of all Claims against the Debtors for voting purposes.

6.2     Payments on a Business Day. Whenever an action hereunder is required to be made on a day other than a Business Day, such action shall be made on the first Business Day

immediately following, and, as to any Distribution, without any additional interest, if interest is otherwise required by the Plan, Confirmation Order or the Code.

6.3 <u>Interests on Claims</u>. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by the Code or other law, interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing on any Claim, including Claims to be paid through Distributions over a period of time. Interest shall not accrue or be paid upon any Unresolved Claim in respect of the period from the Filing to the date of a Distribution is made thereon if any after such Unresolved Claim becomes an Allowed Claim.

6.4 <u>Fractional Cent</u>. Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

6.5 <u>Setoff</u>. The Debtors may, but are not required to, set off against any Claim to be paid pursuant to the Plan any Pre-Petition or Post-Petition Claims which the Debtors may have against a Claimant, but neither the failure of the Debtors to do so nor the allowance of any Claim against the Debtors shall constitute a waiver or release of any such setoff Claim against a Claimant.

6.6 <u>Continuing Activities of Attorneys and Accountants</u>. After the Confirmation Date, Lippes Mathias may continue to act as attorneys for the Debtors, and Bahgat may continue to act as accountants for the Debtors, to advise and to assist the Debtors in taking any steps to be performed under this Plan or applicable law. To the extent compatible with the Code, the compensation for such future services post-Confirmation shall not require approval of the Court.

6.7 <u>Headings</u>. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

6.8 <u>Notices</u>. All notices required or permitted to be made in accordance with the Plan and shall be in writing and shall be both (1) delivered personally or by electronic mail and (2) shall be mailed by registered or certified mail, return receipt requested:

(a) If to the Debtors, to:

Jeffrey and Lori Menoff
8925 Nash Hill Road
Gowanda, NY 14070

with a copy to:

Daniel F. Brown, Esq.
Lippes Mathias LLP
9145 Main Street
Clarence, New York 14031
E-Mail: dbrown@lippes.com

(b)     If to the holder of a Claim, at the address set forth in its most recently filed Proof of Claim or, if none, at its address set forth in the Debtors' Bankruptcy Schedules, prepared and filed with the Court pursuant to Rule 1007(b).

(c)     Any of the foregoing may change the address at which it is to receive notices under the Plan by sending notices pursuant to the provisions of this Article to the person to be charged with the knowledge of said change, except that the holders of a Claim must notify the United States Bankruptcy Court Clerk's Office, as well as the Debtors and the Debtors' counsel, of any changes in address.

(d)     Notice shall be deemed given when received, except that as to notices to holders of Claims which have changed their addresses since the Filing from the most recent address contained in either the Debtors' Schedules or in a Creditor's most recently filed Proof of Claim, without notifying the United States Bankruptcy Court, the Debtors and their counsel, notices shall be deemed given upon the filing of proof of service via mail, addressed to said last known address, regardless of whether or not received.

6.9     Revocation or Withdrawal of the Plan.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, then the Plan will be deemed null and void and nothing contained in the Plan will be deemed to constitute a waiver of any Claims by or against the Debtors or any other entity or shall prejudice in any manner the rights of the Debtors or any entity in any further proceedings involving the Debtors.

6.10     Severability.  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

6.11     Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

6.12     Successors and Assigns.  The rights and obligations of any entity named and referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

6.13     Reservation on Rights.  Nothing contained herein shall prohibit the Debtors from prosecuting or defending any of their rights as may exist on their own behalf.

6.14     Disbursing Agent.  The Debtors shall act as their own disbursing agent under this Plan and shall establish such account or accounts as may be required to effectuate payments as provided for in this Plan.

6.15     Ratification of Transactions of Debtors.  Unless otherwise provided in this Plan, this Plan shall not supersede any stipulations entered into by the Debtors and approved by order of the Bankruptcy Court during the pendency of the Debtors' Chapter 11 Case.

# Article VII

## CRAMDOWN:  CONFIRMATION WITHOUT
## ACCEPTANCE BY ALL IMPAIRED CLASSES

7.1     In the event that any Class of Creditors votes against the Plan, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Code Sections 1129(a)(15) and (b).

# Article VIII

## EFFECTS OF CONFIRMATION

8.1     <u>Revesting of Assets</u>.  Subject to the provisions of this Plan, the property of the estate of the Debtors shall revest in the Debtors on the Effective Date.  As of the Effective Date, all such property of the Debtors shall be free and clear of all liens, Claims of holders thereof, except as otherwise provided herein.  From and after the Effective Date, the Debtors may use, acquire and dispose of any property, free of any restrictions of the Code, except as otherwise provided in the Plan.

8.2     <u>Confirmation Injunction/Permanent Injunction</u>.  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim that is to be paid or discharged under this Plan are enjoined (the "Confirmation Injunction") from taking any of the following actions on account of any such Claims or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, or their property to attempt to collect a Pre-Petition Claim; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or other against the Debtors or their respective property; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtors or their property; (d) asserting a setoff, right of subrogation recoupment of any kind against any debt, liability or obligation due to the Debtors or their property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  Upon the issuance of the Debtors' discharge, this Confirmation Injunction shall become a permanent injunction.  If the Court were for some reason to deny discharges to the Debtors, the Confirmation Injunction would not become a permanent injunction and all liabilities of the Debtors would remain due, with the Debtors receiving credit for all payments previously made.

8.3     <u>Post-Confirmation Matters</u>.  As provided elsewhere in this Plan, the Debtors shall begin making Distributions to their Creditors in accordance with the terms of the Plan upon the Effective Date of the Plan.  Upon the Substantial Consummation of this Plan, the Debtors will file a Final Report and a motion for entry of a Final Decree.  Upon the entry of a Final Decree in this Case, the Case will be closed.  The Debtors will thereafter continue to make Distributions to their Creditors in accordance with the terms of this Plan until those Creditors are either paid in full or otherwise receive all of those Distributions which are provided for pursuant to the Plan.  As set forth in the preceding paragraph, all entities which hold Claims against the Debtors which arose prior to the Filing and/or which are to be paid and/or discharged pursuant to the Plan shall be enjoined from taking any actions to collect or otherwise enforce those Claims against the Debtors or their property while the Debtors are making their confirmed Chapter 11 Plan payments, absent

the reopening of the Case and the entry of an Order of the Court authorizing such entity to take any such actions. Upon the Debtors' completion of all Plan Distributions to Class 9 General Unsecured Creditors provided for by this Plan, without the need for the payment of a Case reopening fee, the Debtors shall be permitted to file: (1) an application to reopen this Case for the sole purpose of issuing a discharge to the Debtors and (2) a certification by the Debtors that all required Plan Distributions have been made in accordance with their confirmed Chapter 11 Plan. Notice of the application shall be served upon all creditors and the Office of the United States Trustee. At that time, any Creditor may object to the Debtors receiving their discharges, if they believe that cause exists for their discharges to be denied. After the Debtors' discharge is issued or otherwise addressed by the Court, the Clerk of the Court will be authorized to re-close this case.

8.4     Discharge of Debtors. Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, including any interest accrued on Claims from the Filing. Except as provided in the Plan or the Confirmation Order, the issuance of the Debtors' discharges shall discharge the Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a Proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Code, (ii) a Claim based on such debt is allowed pursuant to Section 502 of the Code or (iii) the holder of a Claim based on such debt has accepted the Plan. If the Court issues discharges to the Debtors, the Confirmation Injunction provided for in Paragraph 8.2 of this Plan shall become a permanent injunction.

## Article IX

## RETENTION OF JURISDICTION

9.1     Notwithstanding Confirmation of the Plan, the Court shall retain jurisdiction for the following:

(a)     To issue all such orders as may be necessary or appropriate in aid of consummation of the Plan.

(b)     To consider and to determine the allowance of Claims upon objection to such Claims filed by the Debtors.

(c)     To determine requests for payments of Claims entitled to priority under Section 507(a), including compensation of parties entitled thereto.

(d)     To determine all controversies arising from Claims or preferences or other voidable transfers, or otherwise relating to Chapter 5 Powers.

(e)     To determine motions for rejection or assumption of executory contracts and to pass upon Claims resulting therefrom.

(f)     To determine any dispute as to the classification, allowance or secured status of Claims.

(g)     To determine, pursuant to Section 505, any tax accrued before Confirmation.

(h)     To hear and to determine any adversary proceedings or contested matters commenced prior to Confirmation.

(i)     To determine any dispute regarding the interpretation or implementation of the Plan, including any disputes with Creditors arising after the entry of any Final Decree, but before the Debtors have completed their Plan Distributions and/or before the Debtors are issued their discharge.

(j)     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

(k)     To modify the Plan pursuant to Section 1127 anytime before substantial consummation.

(l)     To resolve any disputes between or among any of the parties in this Case, including, but not limited to, the Debtors and holders of Claims.

(m)     To enter the Debtors' discharge, a final decree and all related appropriate orders.

(n)     To enter orders in respect of such other matters as may be set forth in the order of Confirmation or as may be authorized under the provisions of the Code.

## Article X

## CONCLUSION

10.1     Based upon a comparison of the alternatives available, including liquidation of the assets of the Debtors, it is the belief of the Debtors that the Plan offers all Classes of Creditors a greater return than would be possible under any available alternative.  On this basis, the Debtors urge all Creditors to vote to accept the Plan and to evidence such acceptance by returning their ballots immediately.

Dated: Gowanda, New York         **JEFFREY D. MENOFF**
         November 5, 2023

                                                By:     /s/ Jeffrey D. Menoff
                                                        Jeffrey D. Menoff

Dated: Gowanda, New York         **LORI L. MENOFF**
         November 5, 2023

                                                By:     /s/ Lori L. Menoff
                                                        Lori L. Menoff

Dated: Clarence, New York **LIPPES MATHIAS LLP**
    November 6, 2023

By: /s/ Daniel F. Brown
    Daniel F. Brown, Esq.
    Attorneys for the Debtors
    9145 Main Street
    Clarence, New York 14031
    Direct Dial:  (716) 235-5030
    Facsimile:  (716) 565-1920
    E-mail:  dbrown@lippes.com